CLARENCE E. HEYWOOD and RUTHE C. HEYWOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heywood v. Commissioner
Docket No. 7131-72.
United States Tax Court
T.C. Memo 1974-283; 1974 Tax Ct. Memo LEXIS 36; 33 T.C.M. (CCH) 1311; T.C.M. (RIA) 740283; November 4, 1974, Filed. Robert G. Hawkins, for the petitioners. Joseph M. Wetzel, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined the following *37 deficiencies and additions to tax in the Federal income tax of petitioners for the taxable years 1966 through 1969: Year
Deficiency
Additions to the Tax (Sec. 6653(b), I.R.C. 1954) 1966
$ 2,944.31
$ 1,472.16
1967
5,745.16
2,872.58
1968
9,500.70
4,750.35
1969
14,738.81
7,580.15
$32,928.98
$16,675.24
Clarence E. Heywood has conceded his liability for the deficiencies and additions to the tax asserted by the respondent for the years in question. The sole question before the Court for our determination is whether Ruthe C. Heywood (hereinafter referred to as "petitioner") is entitled to relief from liability under section 6013(e). [1]
FINDINGS OF FACT Clarence E. Heywood and Ruthe C. Heywood are husband and wife, whose legal residence at the time of the filing of the petition was Portland, Oregon. They have lived together as husband and wife at all times pertinent herein. During the years in question, Clarence E. Heywood was employed by United Medical Laboratories, Inc. (hereinafter referred to as "UML") as coordinator *38 of services while petitioner was a practicing accountant and a member of the National Society of Public Accountants. Prior thereto, petitioner had worked for both public accountants and certified public accountants, in addition to being employed as a bookkeeper in 1963 at Empire Block Co. During the years 1966 to 1969, inclusive, petitioner's husband was in charge of the supervision and operation of the postage meters at UML.When the postage meters needed to be reset, he would obtain from the treasurer of the company a check payable to the post office in excess of the postage due on the meters. Upon presenting the postage meters to be reset, he would receive this excess in the form of money orders and stamps. In this manner, he obtained and illegally converted to his use, the following amounts: Year
Amount 1966
$14,300
1967
22,925
1968
30,375
1969
38,500
Petitioner's husband endorsed part of the postal money orders illegally converted during the years in question to the order of the following payees in the amounts described below: Aggregate Amounts Paid
Payee
1966
1967
1968
1969 First National Bank of Oregon
$644.00
Zukor's Clothing Store
207.28
$ 44.00
United States National Bank [2]
779.87
$ 3,166.76
$ 4,684.90
Oregon Mutual Savings Bank
548.40
934.28
1,352.00
Pacific Finance
265.00
573.00
679.44
Associates of Finance of Oregon, Inc.
767.60
Bank of California
220.44
1,098.08
Bank Americard
496.94
1,126.83
General Electric Credit Corp.
256.50
262.08
Winfield Investment Program
400.00
350.00
Miscellaneous Payees:
(a) Medical expenses
1,480.95
2,115.37
(b) Automobile expenses (repair, oil, gasoline, tires, licenses)
2,689.70
1,785.88
(c) General household expenses
2,623.49
2,605.77
(d) Landscaping
661.00
(e) Boat expenses
788.17
(f) Gifts to children
400.00
(g) Miscellaneous
678.98
367.24
Total
$851.28
$1,857.71
$14,398.68 [3]
$17,946.28 [4]
*39 Neither the petitioner nor her husband were able to account for the expenditure of the balance of the postal money orders converted during the years 1966 and 1967. With respect to the years 1968 and 1969, an unascertained amount of the unaccounted for postal money orders was spent by petitioner's husband in various bars, casinos, race tracks, and the like. Petitioner and her husband traveled to gambling spots in Reno, Nevada, at least three times during the years in question for the *40 purpose of vacationing and gambling. [5] While in Reno in 1969, her husband cashed postal money orders totaling $696.08. Once he had to write checks in excess of $700 to cover his gambling losses. Petitioner also cashed checks in varying amounts on these trips but spent very little on gambling. [6]
On at least two occasions, petitioner cashed postal money orders for her husband, placing her name on the order as purchaser. [7] She subsequently returned the money to her husband. The payee in both instances was the Elks Club, and the amounts involved were $85 and $100. On at least several other occasions, petitioner was with her husband at the Elks Club when he cashed postal money orders.[8]
*41 On or about April 21, 1969, petitioner and her husband gave a friend, Selma Rogstad, who worked at the nearby Gateway Tavern, a postal money order for $98.50 to finance her trip to the funeral of her father. During the years in question, petitioner and her husband had a joint checking account in the United States National Bank from which she paid the following amounts on account of the items described below: Year
Item
Amount 1966
Trailer
$ 640.00
1966
United States National Bank
500.00
1966
Pontiac
225.00
1966
Pontiac
101.35
1966
Awning and Supply Company
100.00
1967
Bank of California
110.22
1967
Winfield Investment Program
100.00
1968
Portland Sanitarium and Hospital
619.00
1968
Bank of California
165.33
1968
Bank of California
165.33
1968
Upholstering
125.00
1968
Rhodes Stores
106.00
1968
Upholstering
100.00
1968
Pontiac
100.00
1969
First National Bank
250.00
1969
Honda Motorcycle
200.00
Total
$3,607.23
In addition, petitioner withdrew numerous other sums of money from the account to pay for everyday necessitites, as well as other vacation and leisure expenses incurred during the years *42 in question. The petitioner and her husband filed joint Federal income tax returns for the taxable years 1966 to 1969, inclusive. In said returns, they reported joint income in the form of salaries, interest, dividends, and gambling, as follows: Year
Salaries
Interest
Dividends
Gambling
Other
Total 1966
$11,914.70
$ 7.70
$0
$ 954.50
$ 11.00
$ 12,887.90
1967
13,880.20
15.58
0
0
184.40
14,080.18
1968
13,162.21
10.89
8.54
0
128.05
13,309.69
1969
13,175.00
0
4.04
2,500.00
49.15
15,728.19
In April of 1969, petitioner and her husband purchased an Ulrich Open Cruiser for $8,500, paying $1,000 down and financing the balance, and entered the charter fishing boat business under the business name of "Lucky Five." On their joint return for 1969, petitioner and her husband reported a net loss for the business for the taxable year ending December 31, 1969, in the amount of $2,572.54. The petitioner undertook the preparation of said returns. She received from her husband his W-2 forms for each year, together with information with respect to the gambling winnings reported in the returns. All other information required *43 for the preparation of the returns was compiled by the petitioner. She had available the check stubs, cancelled checks, bank statements, finance company statements, and medical and drug receipts. None of the funds acquired by her husband as a result of the conversion of funds belonging to his employer were reflected in these returns. Respondent asserted deficiencies and additions to the tax under section 6653(b) in the income tax of petitioners for the taxable years 1966 to 1969, inclusive, on account of the failure to report as income the amounts petitioner's husband had illegally converted from his employer. Petitioner's husband has conceded his liability for the deficiencies in tax and penalties. OPINION During the taxable years 1966 through 1969, petitioner's husband embezzled the sums of $14,300, $22,925, $30,375, and $38,500, respectively, from his employer. In filing their joint Federal income tax returns for such years, petitioner and her husband failed to include in gross income any of the amounts embezzled. Petitioner's husband has since conceded his liability for both the deficiencies and additions to the tax as a result of his embezzlement. The sole question *44 that remains for the Court's determination is whether petitioner is entitled to relief from liability under the so-called "innocent spouse" provisions of section 6013(e) on account of any of the deficiencies asserted for the years in question. [9]
Under section 6013(e), petitioner may be relieved of liability for the deficiencies asserted during the years in question which are attributable to any omission from income by her husband if she can show with respect to each year that: (1) the income omitted from the joint return exceeded 25 percent of the amount of gross income stated in the return; (2) petitioner did not know of, and had no reason to know of, such omission; and (3) under all the facts and circumstances (including whether petitioner significantly benefitted from the omission, directly or indirectly) it would be inequitable to hold her liable for the deficiency asserted for such year. [10] The burden of proving each of the above elements *45 is upon petitioner. ; . *46 Respondent does not dispute that the first of the above requirements has been met by petitioner for the taxable years 1966 and 1967. He contends, however, that such requirement has not been met with respect to the taxable years 1968 and 1969. [11]
We find it inappropriate to address ourselves to the merits of respondent's argument at this time since even assuming that petitioner has satisfied the first requirement of the statute as to all the years in question, she has failed to meet her burden with respect to the remaining requirements. Moreover, it was the Court's distinct impression at trial that respondent was only contesting whether petitioner *47 had satisfied the latter two requirements of the statute. To permit respondent to prevail at the outset on the basis of an issue raised for the first time on brief would be grossly unfair to petitioner who, if given proper notice, may well have been able to supply the partnership figures necessary to make the proper determination. Cf. , affd. (C.A. 2, 1933). In order to be relieved of liability, the statute requires that the spouse seeking such relief must establish that "in signing the return he or she did not know of, and had no reason to know of, such omission." On the basis of the record before us, we find that petitioner does not meet this condition of the statute. [12]
*48 The Court cannot accept petitioner's testimony that she did not know that her husband had other sources of income or funds which were not reflected in their joint returns. Petitioner had full access to their joint bank accounts. In fact, it appears that she handled the family financial transactions, including the preparation of the joint Federal income tax returns. She wrote the checks and paid the bills. She was an accountant. For the taxable years 1968 and 1969, the funds derived from her husband's embezzlement were used to meet payments on their joint obligations, loans and the like. On other occasions, she saw her husband cash large money orders. Since it is clear from the record that petitioner must have known that her husband had other undisclosed sources of income for the taxable years 1968 and 1969, her denial of such knowledge goes to the credibility of her testimony with respect to the years 1966 and 1967. Finally, turning to the last requirement of the statute, petitioner has failed to show that she did not receive a significant benefit as a result of her husband's defalcations. The only evidence offered to the contrary consists of vague and general testimony *49 at trial from several neighbors and acquaintances that petitioner's standard of living was not noticeably higher during the years in question. This is not of itself sufficient to meet her burden of proof. The embezzlement went on for several years and no clear cutoff point was ever established. Moreover, petitioner presented no records to support her contention that the family income, aside from the embezzled sums, was adequate to meet their style of living, including the trips to Nevada. The testimony of her husband that she received no benefit from any of the omissions is contrary to the evidence in the record. On the basis of all the facts and circumstances, we cannot find that it would be inequitable to hold petitioner liable for the deficiencies asserted for the years in question. In accordance with the above, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. The amounts paid to United States National Bank were either deposits to petitioner and her husband's joint checking acccount or payments on outstanding loans. ↩
3. In his brief, respondent incorrectly computed that the amounts paid to Pacific Finance, General Electric Credit Corp., and Bank of California in 1968 totaled $927.58 when the correct figure is actually $1,927.58. This accounts for the $1,000 difference between the Court's total for 1968 and the respondent's. ↩
4. Respondent erroneously computed the Winfield Investment figure for 1969 to be $400 instead of the correct amount of $350 thus accounting for the $50 differential between the Court's total and respondent's. ↩
5. Petitioner and her husband traveled to Nevada once in 1968 and twice in 1969. One of the trips in December of 1969 was occasioned by the marriage of their daughter, Terry. ↩
6. During her trips to Nevada in 1969, petitioner cashed checks totaling $540.25. ↩
7. The two dates involved were August 1, 1969 and September 2, 1969. ↩
8. On August 23, 1968, Clarence E. Heywood cashed two money orders for $16.50 and $52 while on August 30, 1969, he cashed five postal money orders in the total amount of $500. ↩
9. Petitioner's liability with respect to the additions to tax is not in issue since respondent has conceded that no part of the underpayment of tax for the years in question is attributable to fraud on her part. See sec. 6653(b). ↩
10. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. * * * (e) Spouse Relieved of Liability in Certain Cases. - (1) In General. - Under regulations prescribed by the Secretary or his delegate, if - (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. (2) Special rules. - For purposes of paragraph (1) - * * * (B) the amount omitted from gross income shall be determined in the manner provided by section 6501(e) (1) (A). ↩
11. Petitioner and her husband's returns for 1968 and 1969 indicated that they had sustained losses from a partnership in which petitioner's husband was a partner. Respondent argues that since petitioner has failed to show the partnership's gross income for 1968 and 1969 it is impossible to compute her husband's distributive share thereof. Sec. 702(c). Absent such figure, respondent contends that petitioner cannot possibly show that the 25 percent requirement of sec. 6013(e) (1) (A) has been met for the years 1968 and 1969. ↩
12. There is no basis to petitioner's contention that respondent, by conceding that the facts are insufficient to establish her liability for fraud under sec. 6653(b), has also conceded her compliance with the second requirement of sec. 6013(e). The posture of the burden of proof under each section, upon the respondent in the former and upon the petitioner in the latter, makes it entirely possible for a petitioner to escape the fraud penalty yet fail to qualify for relief from liability under the second requirement of the "innocent spouse" provisions. See . ↩